ALBERT LICZNERSKI *vs.* WILMINGTON CITY RAILWAY COMPANY.

*Case—Personal Injuries—Demurrer—Pleading—City Ordinance —Rate of Speed of Locomotives, Railroad Cars and other Vehicles in the City of Wilmington—Railway Cars.*

The City ordinance limiting the rate of speed of locomotives, railroad cars and other vehicles within the limits of the City of Wilmington, relates to railroad cars, but not to cars of city railways.

(*December 23, 1904.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Robert H. Richards* for plaintiff.

*Walter H. Hayes* for defendant.

Superior Court, New Castle County, November Term, 1904.

ACTION ON THE CASE (No. 18, February Term, 1904), to recover damages for personal injuries.

Demurrer.

The second count of the narr, after alleging that the defendant was a corporation of the State of Delaware operating certain lines of street railway in the City of Wilmington and State aforesaid, further alleged ; " that being such corporation, so engaged as aforesaid, the said defendant on the twenty-seventh day of November, A. D. 1903, at the City of Wilmington, county and State aforesaid, negligently and carelessly ran one of the cars operated by it on said railway at a high, dangerous and unlawful rate of speed, to wit, upward of the speed of six miles an hour, contrary to the ordinance of the City of Wilmington, along and over its tracks upon one of the public streets of the said City of Wilmington, to wit, on the street known as West Fourth Street between Scott Street and Lincoln Street, in the City of Wilmington, said West Fourth Street being, then and there, a public highway of the said City, whereby the said car did, then and there, run into a certain wagon which was then and there being driven by the said Alexander Licznerski, in the exercise of due care and caution on his part, upon said West Fourth Street, whereby the said wagon was crushed, broken and demolished, and the said Alexander Licznerski was struck, cut and hurt in his head, back, limbs and other parts of his body, and thereby the said Alexander Licznerski was greatly bruised, wounded and injured," etc.

The first two paragraphs of *Section 12 of Chapter 7 (page 376) of the Charter Laws and Ordinances of the City of Wilmington (1902)*, referred to in said second count, are as follows :

" It shall be unlawful for any locomotive, railroad car, or other vehicle to be propelled or drawn upon such part of any railroad as shall be within the limits of the City of Wilmington at a faster rate than six miles per hour.

" The engineer, conductor, controller, owner or owners, or other person or persons, having for a time the command of any locomotive, railroad car, or other vehicle, who shall propel or cause to be propelled or moved, such locomotive, railroad car, or other vehicle, upon such part of any railroad as shall be within the

limits aforesaid at a faster rate than six miles per hour, for every such offense shall forfeit and pay a fine of one hundred dollars."

Defendant filed a general demurrer to said second count; counsel for defendant contending that the above quoted *Section 12 of Chapter 7 of the Charter Laws and Ordinances of the City of Wilmington* does not apply to street railway cars.

*Maxwell vs. Wilmington City Railway, 1 Marvel, 199.*

Further, that the Legislature of Delaware has defined the word "railroad" in the General Corporation Law (*Vol. 22 Laws of Delaware, Sec. 127, Chap. 394*) as a road operated by steam power, and the word "railway" as a road operated by any improved motive power other than steam.

*Bay State Gas Company vs. Content & Company, 4 Pennewill, 247; Victor G. Bloede vs. The Joseph Bancroft and Sons Company, 106 Fed., 396.*

*Robert H. Richards for plaintiff:*

The question raised by this demurrer, is, whether or not the first two paragraphs of *Section 12, of Chapter 7 of the City Ordinances of the City of Wilmington,* which said paragraphs are to be found on page 376 of the *Charter Laws and Ordinances of the City of Wilmington (1902)*, refer to and limit the rate of speed of the cars of the street railroads within the City of Wilmington, or, more specifically, whether or not said paragraphs refer to and limit the rate of speed of the cars of the defendant company within the City of Wilmington.

This is a new question for the first time directly presented to the Court. It may be contended that the same question was raised and passed upon in the case of *Maxwell vs. The Wilmington City Railway Company, 1 Marvel 199*; but it is respectfully submitted that the question submitted by this demurrer was neither presented

to the Court nor passed upon in the said case of Maxwell against the Railway Company.

It is respectfully submitted that the word "railroad car" as used in the first two paragraphs of said section 12, necessarily includes a trolley car such as is used upon the street railroad of the defendant company or taking the broader descriptive term used by the said Ordinance, viz., the word "vehicle" there can be no manner of doubt but that this word includes a trolley car such as is used by the defendant company or in fact any other sort of car, whether drawn by horses, propelled by electricity, drawn by a cable, or drawn or propelled in any other manner upon a street railway.

The last edition of Webster's Unabridged Dictionary defines the word "vehicle" as follows, to wit :—"That in or on which any person or thing is, or may be carried, as a coach, carriage, wagon, cart, car, sleigh, bicycle, etc.; a means of conveyance ; specifically, a means of conveyance upon land."

It is further submitted that the tracks of the defendant company laid in the streets of the City of Wilmington constitute a "railroad" within the meaning of that term as used in the first two paragraphs of said Section 12. It is true that the defendant company calls itself a railway company and it is true that the tracks of such street railroad as is operated by the defendant company are frequently called a railway, but it is respectfully submitted upon authority that the term railroad includes street railways as well as steam railroads and that the term railway and railroad are synonymous in their meaning.

*P. R. R. vs. Pittsburg, 104 Pa. St., 522; Hestonville Railroad Company vs. Phila., 89 Pa. St., 210 ; Mass. L. & T. Company vs. Hamilton, 88 Fed., 588; Johnson's Administrator vs. Louisville Ry., 10 Bush (Ky.), 231 ; Chicago vs. Evans, 24 Ill., 52.*

Of course in the construction of this ordinance we cannot rely alone upon the mere definition of terms used, but must consider the

whole pertinent context of the ordinance, or, in this case, more particularly of Section 12 of the ordinance, and the evident object and purpose of the said ordinance and determine therefrom the intention of the body who passed the ordinance.

Was it the intention of the City Council that the first two paragraphs of Section 12 of the ordinance in question should apply to street railroads as well as to steam railroads?

The ordinance was passed October 30, 1856, and is entitled, "An Ordinance concerning offenses against the Public Economy and Certain Nuisances." The ordinance then proceeds to consider and legislate upon certain specific nuisances. Section 12 of the ordinance is the only section which it is necessary to consider in construing the first two paragraphs thereof. Certainly an ordinance dealing with public nuisances should, if possible, be construed as broad enough to effectually cover the specific nuisance sought to be legislated against, and certainly there was just as much reason for restricting the rate of speed of vehicles or cars upon street railroads as those running upon steam railroads and, as a matter of fact, greater reason, because the cars upon street railroads undoubtedly run through more frequented parts of the city than those running upon steam railroads. While there were no cars running upon street railroads at the time of the passage of this ordinance propelled by electricity, or indeed, may have been no cars running upon any street railroad whatever at that time, yet it is a rule of statutory construction that the language of a statute is generally extended to new things which were not known and could not have been contemplated by the legislative body when it was passed, when the act in question deals with a *genus* and the thing which afterwards comes into existence is a *species* of that genus.

*Bovill, C. J., in Rex vs. Smith, L.R. 1 C. C., 170. Holt, C. J. in Lane vs. Cotten, 12 Mod., 485.*

Indeed it was held in *Indianapolis, etc., R. R. Company vs. Blackman, 63 Ill., 117*, that an act relating to "all existing

railroads" extends to railroads incorporated after the passage of the act.

An examination of the whole of said Section 12 discloses that said section was intended to regulate three separate nuisances, viz : *First*—The rate of speed of cars and other vehicles propelled or drawn upon any railroad within the City of Wilmington ; *Second* —To provide for the maintenance of look-outs or persons whose duty it shall be to precede " all locomotives and trains of cars" and to give warning, and coupled with this is imposed the duty of giving warning by ringing the locomotive bell ; and *Third*—To prohibit the permitting " Any locomotive, or any train, or car or other vehicle " belonging to or used or employed by " any railroad company," to remain stationary upon the track at the crossing of a public street in said city.

The first two paragraphs of said Section 12, refer to the first of these nuisances, and it is the construction of these paragraphs with which we are now concerned ; the third papagraph refers to the second above mentioned nuisance; and the fourth paragraph refers to the third nuisance above mentioned.

An examination of the language used in this section shows clearly that the City Council intended the third paragraph of the section to be restricted in its application to steam railroads exclusively, for that portion relating to the maintaining of look-outs provides that these look-outs shall give warning of the approach of " all locomotives and trains of cars," and these words " locomotives and trains of cars " are used in every case where the question of warning is referred to, and so that part of the third paragraph which refers to the ringing of the bell uses in each case the term " locomotive " alone ; and it is submitted that the careful and exclusive use of these terms " locomotive " and " locomotives and trains of cars " manifestly indicate that the nuisance here legislated against was referable only to steam railroads.

On the other hand, in the first two paragraphs of said section

(referring to the rate of speed) there is a different terminology employed and in these paragraphs the question of rate of speed is in every case employed in connection with " locomotive, railroad car or other vehicle " to be propelled or drawn upon such part of any railroad as shall be within the limits of the City of Wilmington," showing clearly that the nuisance in these two paragraphs legislated against, viz., rate of speed, is referable to other objects than the nuisance legislated against in the third paragraph ; and a distinction is clearly shown to have existed in the minds of the City Council by the different terminology employed.

So in the fourth paragraph, referring to objects remaining upon the railroad track at a street crossings, the terminology there employed is much broader than is employed in the said third paragraph.

While usually one section of an act, at least, should be construed together, it is respectfully submitted that in this case this section properly should have been divided into three sections, because there are three different and distinct nuisances legislated against. And the language disclosing the objects to which these several nuisances are respectively referable, indicates clearly that the first two paragraphs, referring to rate of speed, should be construed by themselves, and likewise that the third and fourth paragraphs should be construed separately.

It is further submitted that the words used in this ordinance, as in statutes, are presumed to be used in their popular and ordinary sense and, using them in such sense, it is respectfully submitted that the first two paragraphs of said Section 12 clearly should be construed as limiting the rate of speed of the cars of the defendant company.

LORE, C. J. :—While these questions have not been distinctly and separately passed upon formally, yet in the trial of cases, again and again the question has been asked, whether there was any

ordinance governing the speed of electric cars in the City of Wilmington, and it seems to have been generally conceded that there was not. The ordinance seems to relate to railroad cars, but not to cars of city railways.

We sustain the demurrer.